# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR R. DEL LLANO, individually and on behalf of others similarly situated,<br><br>                   Plaintiff,<br><br>v.<br><br>VIVINT SOLAR INC., AND SOLAR MOSAIC INC.,<br><br>                   Defendants. | Case No.: 17-cv-1429-AJB-MDD<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT VIVINT SOLAR INC.'S MOTION TO DISMISS FOR LACK OF STANDING;**<br><br>**(2) DENYING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AS MOOT; AND**<br><br>**(3) DISMISSING CASE WITH PREJUDICE**<br><br>(Doc. Nos. 7, 14) |

Presently before the Court are two motions: (1) Defendant Vivint Solar Inc.'s ("Vivint") motion to compel arbitration, or in the alternative, motion to dismiss for failure to state a claim and for lack of Article III standing; and (2) Defendant Solar Mosaic Inc.'s ("Mosaic") motion to compel arbitration. (Doc. Nos. 7, 14.) Plaintiff Victor R. Del Llano ("Plaintiff") opposes both of these motions. (Doc. Nos. 17, 18.) On January 18, 2018, the

Court heard oral argument on the motions and then took them under submission. (Doc. No. 24.) For the reasons stated in more detail below, the Court **GRANTS** Vivint's motion to dismiss for lack of Article III standing, **DENIES** Mosaic and Vivint's motions to compel arbitration **AS MOOT**, and **DISMISSES** Plaintiff's complaint **WITH PREJUDICE**.

## BACKGROUND

The contours of Plaintiff's complaint are quite simple. Vivint installs solar rooftop panels and Mosaic offers consumer financing for home improvements, including for solar systems. (Doc. No. 7-1 at 8; Doc. No. 14-1 at 7.) On March 27, 2017, Plaintiff received a notice that someone had accessed his credit report. (Doc. No. 1 ¶¶ 27, 29.) Plaintiff then reviewed his Trans Union credit file and discovered that both Defendants had checked his credit information by making a general or specific certification to Trans Union that they sought the information because Plaintiff had an existing credit account with each of them. (*Id*.) Plaintiff argues that he has never conducted business nor incurred any financial obligations with either Defendant nor provided them permission to conduct a credit check. (*Id*. ¶¶ 28, 30.)

The simplicity of the complaint and the allegations leading up to the institution of this action however, end there. In direct contrast to Plaintiff's pleading, Defendants allege that Plaintiff consented to the credit check by seeking to enter into a transaction with Vivint for the installation of a solar system on his house. (Doc. No. 7-1 at 10; Doc. No. 14-1 at 8.) Specifically, Luke Jorgenson, a sales representative for Vivint, states that he met with Plaintiff on March 27, 2017, where he was wearing his company shirt and badge and identified himself as an employee of Vivint. (Jorgenson Decl. Ex. 2, Doc. No. 7-2 ¶¶ 1, 2.) Further, during this meeting, Mr. Jorgenson claims that he provided Plaintiff with a Prospective Customer Consent Form ("PCCF") on an electronic tablet. (*Id*. ¶ 3.) Allegedly, Plaintiff viewed the form, selected some of the check boxes, and ultimately signed the form. (*Id*.)

The relevant portion of the PCCF states that:

> By signing below, YOU, the undersigned customer(s) ("**You**", "**Your**") hereby authorize VIVINT SOLAR DEVELOPER, LLC, a Delaware limited liability company (together with Our affiliates, successors, and assigns, "**We**", "**Us**", "**Our**") to: (1) obtain Your credit rating and report from credit reporting agencies; and (2) disclose this and other information to Our assignees, affiliates, and actual or prospective lenders, financing parties, investors, insurers, and acquirers. You further agree that all information provided above is true, correct, and complete in all respects. You agree that any dispute between us shall be resolved by arbitration. You also waive the right to a jury trial and the right to initiate or participate in a class action.

(Doc. No. 7-1 at 10.) This form was purportedly signed by Plaintiff on March 27, 2017. (Jorgenson Decl. ¶ 4.) However, Jason Jensen, the director of programming for Vivint, states that due to a technical issue involving time-zones, the date that was automatically generated on the electronic form populated as "03/28/2017." (Jensen Decl. Ex. 6, Doc. No. 7-6 ¶¶ 3–5.) Notwithstanding this, Mr. Jensen states that Vivint's internal records show that the PCCF was uploaded to the server at 8:17 p.m. Pacific Time on March 27, 2017. (*Id*. ¶ 5.)

Plaintiff's complaint makes no mention of the foregoing allegations made by Defendants. This is because Plaintiff argues in opposition that he never entered into such a contract, never signed a contract, and that the signature on the PCCF was either doctored or forged. (*See generally* Doc. Nos. 17, 18.) Specifically, Plaintiff states that on March 27, 2017, Mr. Jorgenson came to his home, claimed to be a Pacific Gas and Electric representative, and told Plaintiff that he had been selected to be a part of his companies' solar program. (Del Llano Decl. Ex. 2, Doc. No. 17-2 ¶¶ 5, 6.) As it was a windy and cold day, Plaintiff testifies that he invited Mr. Jorgenson into his home where he uncovered that he was a Vivint employee. (*Id*. ¶ 7.) Despite this, they began discussing Vivint's solar program. (*Id*.)

During this conversation, Plaintiff asserts that Mr. Jorgenson began asking numerous questions, including asking Plaintiff for his social security number. (*Id*. ¶ 8.) In response,

3

17-cv-1429-AJB-MDD

> By signing below, YOU, the undersigned customer(s) ("**You**", "**Your**") hereby authorize VIVINT SOLAR DEVELOPER, LLC, a Delaware limited liability company (together with Our affiliates, successors, and assigns, "**We**", "**Us**", "**Our**") to: (1) obtain Your credit rating and report from credit reporting agencies; and (2) disclose this and other information to Our assignees, affiliates, and actual or prospective lenders, financing parties, investors, insurers, and acquirers. You further agree that all information provided above is true, correct, and complete in all respects. You agree that any dispute between us shall be resolved by arbitration. You also waive the right to a jury trial and the right to initiate or participate in a class action.

(Doc. No. 7-1 at 10.) This form was purportedly signed by Plaintiff on March 27, 2017. (Jorgenson Decl. ¶ 4.) However, Jason Jensen, the director of programming for Vivint, states that due to a technical issue involving time-zones, the date that was automatically generated on the electronic form populated as "03/28/2017." (Jensen Decl. Ex. 6, Doc. No. 7-6 ¶¶ 3–5.) Notwithstanding this, Mr. Jensen states that Vivint's internal records show that the PCCF was uploaded to the server at 8:17 p.m. Pacific Time on March 27, 2017. (*Id*. ¶ 5.)

Plaintiff's complaint makes no mention of the foregoing allegations made by Defendants. This is because Plaintiff argues in opposition that he never entered into such a contract, never signed a contract, and that the signature on the PCCF was either doctored or forged. (*See generally* Doc. Nos. 17, 18.) Specifically, Plaintiff states that on March 27, 2017, Mr. Jorgenson came to his home, claimed to be a Pacific Gas and Electric representative, and told Plaintiff that he had been selected to be a part of his companies' solar program. (Del Llano Decl. Ex. 2, Doc. No. 17-2 ¶¶ 5, 6.) As it was a windy and cold day, Plaintiff testifies that he invited Mr. Jorgenson into his home where he uncovered that he was a Vivint employee. (*Id*. ¶ 7.) Despite this, they began discussing Vivint's solar program. (*Id*.)

During this conversation, Plaintiff asserts that Mr. Jorgenson began asking numerous questions, including asking Plaintiff for his social security number. (*Id*. ¶ 8.) In response,

Plaintiff states that he told Mr. Jorgenson that under no circumstances did he want him to run his or his wife's credit, however, he did ask him to return the next day. (*Id*.) Throughout this entire meeting, Plaintiff reiterates that he did not sign any documents electronically or otherwise. (*Id*.) Despite this, about an hour after Mr. Jorgenson left, Plaintiff received the notice from his credit monitoring service that both Defendants had run his credit. (*Id*.)

The next day, when Mr. Jorgenson returned to Plaintiff's home, Plaintiff testifies that he and his wife immediately told him that his company had run his credit without his permission. (*Id*. ¶ 9.) Purportedly, Mr. Jorgenson apologized to Plaintiff and his wife, but tried to defend the credit inquiry by claiming that the credit check would not affect his credit. (*Id*.)

Plaintiff's wife also filed a declaration attesting to the foregoing statements. (*See generally* Del Llano Decl. II Ex. 3, Doc. No. 17-3.) Additionally, she states that the day after Plaintiff's credit was pulled, she called the salesman at the number he provided and left a voicemail. (*Id*. ¶ 10.) Thereafter, Mrs. Del Llano states that she also called Vivint to try and explain what had happened. (*Id*.) After speaking to a Vivint representative, she was told to speak with a manager by the name of Gina. (*Id*.) As Gina was unavailable, Mrs. Del Llano states that she left a voicemail and has yet to hear back. (*Id*.)

Plaintiff filed his complaint on July 14, 2017, alleging two causes of action: (1) Violations of the Fair Credit Reporting Act ("FCRA"); and (2) Violations of the California Consumer Credit Reporting Agencies Act ("CCRAA"). (Doc. No. 1.) Shortly thereafter, Vivint filed its motion to compel arbitration and dismiss class claims or, in the alternative, to dismiss for lack of subject matter jurisdiction and failure to state a claim. (Doc. No. 7.) On August 30, 2017, Plaintiff filed an ex parte motion for extension of time to file his response to the motion, which was granted on September 1, 2017. (Doc. Nos. 12, 13.) On September 13, 2017, Mosaic filed its motion to compel arbitration. (Doc. No. 14.) On October 11, 2017, Plaintiff filed his oppositions to both motions. (Doc. Nos. 17, 18.)

///

///

# LEGAL STANDARD

A. Motion to Compel Arbitration

A district court's role in reviewing an arbitral award is limited. *See United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960). Indeed, "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Local Joint Exec. Bd. of Las Vegas v. Riverboat Casino, Inc.*, 817 F.2d 524, 526 (9th Cir. 1987) (citation omitted). An award will be upheld provided it "draws its essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enter. Wheel and Car Corp.*, 363 U.S. 593, 597 (1960). An agreement "may be overturned only if it violates a public policy which is well-defined and dominant, and . . . ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Riverboat Casino, Inc.*, 817 F.2d at 527 (citation and internal quotation marks omitted).

Specifically, as held by Section 9 of the Federal Arbitration Act ("FAA")

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9.

B. Motion to Dismiss for Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable

legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

C. <u>Motion to Dismiss for Lack of Federal Subject Matter Jurisdiction</u>

Federal Rule of Civil Procedure 12(b)(1) allows a motion to dismiss where a court lacks subject-matter jurisdiction. Because "[f]ederal courts are courts of limited jurisdiction[,]" a court "presume[s] that a cause [of action] lies outside this limited jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). No presumption of truthfulness attaches to the allegations of the plaintiff's complaint as the plaintiff bears the burden of establishing subject matter jurisdiction. *Thornhill Publ'g. Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Thus, the court must presume it lacks jurisdiction until subject matter jurisdiction is established. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Any party may raise a defense based on lack of subject matter jurisdiction at any time. *See Attorneys Trust*

*v. Videotape Computer Prod., Inc.*, 93 F.3d 593, 594–95 (9th Cir. 1996).

# **DISCUSSION**

A.     <u>Plaintiff Does Not Adequately Plead Standing</u>

In the interests of judicial efficiency, the Court first turns to Vivint's contention that Plaintiff's complaint fails to plead Article III standing. (Doc. No. 7-1 at 14.) Vivint specifically points the Court to a nearly identical complaint filed by Plaintiff's counsel that was dismissed with prejudice by District Judge Cathy Ann Bencivengo last year—*Nayab v. Capital One Bank, N.A.*, No. 3:16-CV-3111-CAB-MDD, 2017 WL 2721982 (S.D. Cal. June 23, 2017). (*Id.* at 15.) In opposition, Plaintiff mounts that *Nayab* is inapplicable while also asserting that his invasion of privacy claim is an injury in fact sufficient to allege standing. (Doc. No. 17 at 16–20.)

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Thus, this doctrine limits the group of litigants allowed to maintain a lawsuit in federal court to seek redress for a legal wrong. *See Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472–73 (1982). The point of inquiring into standing is to ensure that parties have a "personal stake" in the outcome, but also to make certain that the courts do not extend their reach into the province of the legislative and executive branches. *Id.* at 491.

Case law clearly establishes that the "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These elements are that the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citation omitted). These factors cannot be "inferred argumentatively from averments in the pleadings[,]" *Grace v. Am. Cent. Ins. Co.*, 109 U.S. 278, 284 (1883), but rather must "affirmatively appear in the record." *Mansfield, C. & L. M. RY. Co. v. Swan*, 111 U.S. 379, 382 (1884). The plaintiff bears the burden of proving the foregoing elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215,

231 (1990).

The present case turns on the first of the three elements, whether Plaintiff has suffered an injury in fact. An "injury-in-fact" is defined as an "invasion of a legally-protected interest." *San Diego Cty. Gun Rights Comm. v. Reno*, 926 F. Supp. 1415, 1421 (S.D. Cal. 1995) (citation omitted). Thus, a plaintiff must show that this injury is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. (citation and internal quotation marks omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (internal citation and quotation marks omitted). Moreover, a "bare procedural violation, divorced from any concrete harm," does not satisfy the injury in fact requirement of Article III. *Id.* at 1549.

In pleading standing, Plaintiff alleges four main contentions: (1) Plaintiff suffered an invasion of a legally protected interest—an invasion of his privacy—when Defendants accessed his highly confidential personal information on his credit report at a time when they had no right to do so; (2) Plaintiff was affected both psychologically and physiologically because when he realized the behavior of Defendants described above, Plaintiff felt that his privacy had been invaded through the disclosure of his personal and private information; (3) the injury suffered by Plaintiff is concrete as Defendants' actions caused Plaintiff's credit score to drop, directly impacting his credit availability and finances; and (4) Defendants increased the risk that Plaintiff and the class members will be injured if there is a data breach on Defendants' computer systems. (Doc. No. 1 ¶¶ 53, 56–58.)

First, as to Plaintiff's fourth contention listed above, the Court, without hesitation, finds the risk of a data breach to be a speculative or possible future injury that does not satisfy the elements of Article III standing.[1] *See Mehr v. Féderation Internationale de*

---

[1] The Court distinguishes the present matter from *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010), where the Ninth Circuit Court of Appeals held that the plaintiffs had alleged an injury in fact sufficient to confer standing as they had pled "a credible threat of real and immediate harm stemming from the theft of a laptop containing their unencrypted

8

17-cv-1429-AJB-MDD

231 (1990).

The present case turns on the first of the three elements, whether Plaintiff has suffered an injury in fact. An "injury-in-fact" is defined as an "invasion of a legally-protected interest." *San Diego Cty. Gun Rights Comm. v. Reno*, 926 F. Supp. 1415, 1421 (S.D. Cal. 1995) (citation omitted). Thus, a plaintiff must show that this injury is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. (citation and internal quotation marks omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (internal citation and quotation marks omitted). Moreover, a "bare procedural violation, divorced from any concrete harm," does not satisfy the injury in fact requirement of Article III. *Id.* at 1549.

In pleading standing, Plaintiff alleges four main contentions: (1) Plaintiff suffered an invasion of a legally protected interest—an invasion of his privacy—when Defendants accessed his highly confidential personal information on his credit report at a time when they had no right to do so; (2) Plaintiff was affected both psychologically and physiologically because when he realized the behavior of Defendants described above, Plaintiff felt that his privacy had been invaded through the disclosure of his personal and private information; (3) the injury suffered by Plaintiff is concrete as Defendants' actions caused Plaintiff's credit score to drop, directly impacting his credit availability and finances; and (4) Defendants increased the risk that Plaintiff and the class members will be injured if there is a data breach on Defendants' computer systems. (Doc. No. 1 ¶¶ 53, 56–58.)

First, as to Plaintiff's fourth contention listed above, the Court, without hesitation, finds the risk of a data breach to be a speculative or possible future injury that does not satisfy the elements of Article III standing.[1] *See Mehr v. Féderation Internationale de*

---

[1] The Court distinguishes the present matter from *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010), where the Ninth Circuit Court of Appeals held that the plaintiffs had alleged an injury in fact sufficient to confer standing as they had pled "a credible threat of real and immediate harm stemming from the theft of a laptop containing their unencrypted

8
17-cv-1429-AJB-MDD

*Football Ass'n*, 115 F. Supp. 3d 1035, 1057–58 (N.D. Cal. 2015); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013) (holding that the respondents lacked Article III standing because they could not "demonstrate that the future injury they purportedly fear[ed] is certainly impending . . . ."); *Patton v. Experian Data Corp.*, No. SACV 15-1871 JVS (PLAx), 2016 WL 2626801, at *4 (C.D. Cal. May 6, 2016) (holding that a "speculative fear of identity theft is not the credible, real and immediate threat of harm required for Article III standing in data breach cases in the Ninth Circuit[.]") (internal quotation marks omitted).

Next, the Court turns to Plaintiff's first and second contentions that argue that he has standing based off of his invasion of privacy claim. (Doc. No. 1 ¶¶ 53, 56.) Vivint argues that this assertion does not constitute a concrete injury. (Doc. No. 7-1 at 16.) In opposition, Plaintiff contends that under the two considerations in evaluating "concreteness" discussed by the Supreme Court in *Spokeo*, his invasion of privacy cause of action is a harm that has (1) traditionally been regarded as providing a basis for a lawsuit in American courts and (2) that this type of harm is recognized by Congress through the FCRA. (Doc. No. 17 at 16–19 (citing *Spokeo*, 136 S. Ct. at 1547).)

To state a common law invasion of privacy tort claim, a plaintiff must allege "(1) intrusion into a private place, conversation or matter (2) in a manner *highly offensive to a reasonable person*." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Moreover, except in cases involving physical intrusion, the common law invasion of privacy tort "must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few."

---

personal data." *Id*. at 1143. This conclusion was supported by the fact that after the theft, one of the plaintiffs stated that his bank account had been hacked. *Id*. at 1141. Thus, the court in *Krottner* was concerned with harm that arose from the actual publication or theft of the plaintiffs' highly personal information. In contrast to *Krottner*, Plaintiff has not alleged that a data breach has occurred or that Defendants' computers have been stolen. Thus, Plaintiff's allegations to support standing are more conjectural and hypothetical than those pled in *Krottner*.

*Kinsey v. Macur*, 107 Cal. App. 3d 265, 270 (1980); *see also In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 1004 (N.D. Cal. 2016) ("[F]or a person's privacy to be invaded, their personal information must, at a minimum, *be disclosed to* a third party.") (citation omitted).

In light of the applicable legal principles, the Court finds that the downfall to Plaintiff's theory of standing through a claim of invasion of privacy is that he has failed to allege that his private information has been disclosed or released.[2] Moreover, even if disclosure was pled, both the "California Constitution and the common law set a high bar for an invasion of privacy claim[]" where "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of social norms'. . . ." *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015) (citation omitted); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding the alleged disclosure of a users' "unique device identifier number, personal data, and geolocation information . . . [did not] constitute an egregious breach of social norms"); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008) (holding that the allegation that the defendant had created an increased risk of identity theft where a retail store's laptop containing personal information, including the social security numbers of job applicants was stolen did not constitute an egregious breach of privacy).

The Court clarifies that this Order does not seek to conclude that an invasion of

---

[2] The Court notes that during the motion hearing, Plaintiff's counsel claimed that third party disclosure was not needed to adequately plead a cause of action for invasion of privacy. However, as already established through applicable case law from this circuit, the Court disagrees. *See In re Google, Inc. Privacy Policy Litig.*, No. C 12-01382 PSG, 2012 WL 6738343, at *5 (N.D. Cal. Dec. 28, 2012) ("[N]othing in the precedent of the Ninth Circuit or other appellate courts confers standing on a party that has brought statutory or common law claims based on nothing more than the unauthorized disclosure of personal information, let alone an <u>unauthorized disclosure by a defendant to itself</u>.") (emphasis added).

10

privacy claim within the context of the FCRA will never confer standing. In fact, it is quite the opposite with many districts finding that an invasion of privacy under the FCRA can be a concrete harm that meets the injury in fact requirements of Article III. *See Perrill*, 205 F. Supp. 3d at 874 ("Considering this history and Congress's judgment, the Court finds an invasion of privacy within the context of the FCRA constitutes a concrete harm that meets the injury-in-fact requirements."); *see also Burke v. Fed. Nat'l Mortg. Ass'n*, No. 3:16cv153-HEH, 2016 WL 4249496, at *4 (E.D.Va. Aug. 9, 2016) ("Plaintiff's alleged violation of privacy is a concrete harm, even if that harm does not lead to other, more tangible harms.").[3]

However, in the instant matter, Plaintiff's invasion of privacy claim is not adequately pled—Plaintiff has not sufficiently asserted that his private information was disclosed or that the disclosure was egregious.[4] Consequently, his theory of standing employing a claim for invasion of privacy fails as a matter of law.[5] *See In re Vizio, Inc. Consumer Privacy*

---

[3] This holding was vacated by a settlement in *Burke v. Fed. Nat'l Mortg. Ass'n*, No. 3:16cv153-HEH, 2016 WL 7451624 (E.D.Va. Dec. 6, 2016).

[4] Even a case cited by Plaintiff himself supports this conclusion. In *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 873 (W.D. Tex. 2016), the plaintiff's credit reports were provided to the Comptroller. In analyzing standing through plaintiff's claim of invasion of privacy, the court held that the plaintiff had alleged a concrete harm as his credit report was distributed. *Id*. at 875. There is no such distribution of information alleged in the instant matter.

[5] Moreover, the Court notes that it finds the case cited to by Plaintiff, *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017), to support his argument that an invasion of privacy is a harm recognized by Congress to be inapposite to the present matter. (Doc. No. 17 at 18.) In *Syed*, the Ninth Circuit found that the plaintiff had established standing through the allegation that he had discovered that the defendant "had procured and/or caused to be procured a consumer report regarding him for employment purposes based on [an] illegal disclosure and authorization form." *Id*. The court further delineated that this allegation inferred that the plaintiff was "confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure, as required in the statute." *Id*. at 499–500. As currently pled, Plaintiff does not argue that he was confused by the PCCF or that the disclosure was not clearly written. Thus, *Syed* is factually inapplicable.

*Litig.*, 238 F. Supp. 3d 1204, 1211, 1217 (C.D. Cal. 2017) (holding that the plaintiffs' allegation that "unbeknownst to them, Vizio's Smart TVs . . . collect and report consumers' content viewing histories" is sufficient to allege standing under a theory of invasion of privacy); *see also In re Sony Gaming Networks and Customer Data Security Breach Litig.*, 996 F. Supp. 2d 942, 961–62 (S.D. Cal. 2014) (citing cases that found that the plaintiff had adequately pled Article III standing through the allegation that a plaintiff's personal information was "collected and then wrongfully disclosed"); *Low v. Linkedin Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848, at *6 (N.D. Cal. Nov. 11, 2011) (distinguishing *Krottner* in that the plaintiff had not alleged that his highly personal information had been stolen and then exposed to the public).

Lastly, the Court turns to Plaintiff's third contention to support standing—that his credit score has dropped, impacting his credit availability and finances. (Doc. No. 1 ¶ 57.) Regrettably, the Court finds that this allegation, on its own, does not assert a sufficiently concrete injury to establish Article III standing. Instead, any claims of harm that could have flowed from this drop in credit score, i.e. impacting Plaintiff's ability to purchase a home or apply for a mortgage, would have been sufficient to confer standing at the pleading stage.

The Court is cognizant that there is no clear consensus on whether the bare allegation that a plaintiff's credit score has dropped can satisfy the injury in fact requirement for Article III standing. *Compare Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (finding that plaintiffs alleged an injury for purposes of standing where plaintiffs claimed to have "suffered damage to their credit" and were "forced to pay [the defendant] greater payments and a higher interest rate"), *with Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 698 (N.D. Ill. 2016) (finding that a "depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing.").

Presently, the Court is more persuaded by the Seventh Circuit as well as holdings from this district that have concluded that the drop in Plaintiff's credit score is not an

articulated concrete harm. The Court notes that Plaintiff's opposition brief ardently argues that a hard credit inquiry, like the one that Vivint allegedly requested on Plaintiff, affects a consumer's credit score. (Doc. No. 17 at 20.) Thus, Plaintiff contends that he has suffered an injury in fact to confer Article III standing. (*Id.*) Unfortunately, the assertion that Defendants requested a "hard credit inquiry" is not pled anywhere in Plaintiff's operative complaint and thus the Court cannot take this allegation under consideration. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1066 (N.D. Cal. 2010) (reiterating that there "is a general rule against referencing evidence outside the four corners of the complaint" on a motion to dismiss).

In sum, even despite being at the pleading stage where "general factual allegations of injury resulting from the defendant's conduct may suffice," and despite Plaintiff's valiant efforts, the Court is not persuaded that Plaintiff's allegations are sufficient to demonstrate standing. *Lujan*, 504 U.S. at 561 (emphasizing that at each stage of a suit, the elements of Article III standing must "be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (same). Accordingly, the Court **GRANTS** Vivint's motion to dismiss Plaintiff's complaint for lack of standing.

B.     Leave to Amend is Not Warranted

The Court must now determine whether or not Plaintiff should be afforded leave to amend. The Court notes that Plaintiff's counsel during oral argument fervently argued that he was entitled to discovery to see if Defendants' various contentions in support of arbitrability had any merit. Regrettably, the Court finds that in light of the declarations filed by Defendants, Plaintiff's complaint is completely unfeasible and thus precludes this Court from granting Plaintiff leave to amend.

Both Defendants argue that Plaintiff's allegation that his signature was stolen and

then placed on Vivint's PCCF is a literal impossibility.[6] (Doc. No. 21 at 5–7; Doc. No. 22 at 8–10.) Specifically, Nic Johnson, the Director of Software Development for Vivint, states that from his personal knowledge of the way in which Vivint's PCCFs are uploaded by sales representatives, it would be "impossible" for Vivint to retroactively modify the PCCF as Plaintiff suggests. (Johnson Decl. Ex. 1, Doc. No. 21-1 ¶¶ 1, 2, 5.) Moreover, Mr. Johnson testified that Vivint's cloud storage data and records show that the PCCF associated with Plaintiff only has one version that has not been modified since March 27, 2017. (*Id.* ¶¶ 5–6.) Additionally, Vivint's use of its Neo application in submitting customer forms like the PCCF does not allow for a signature to be pasted onto a form after it is submitted. (*Id.* ¶¶ 7–8.) Based upon this declaration, the Court finds that Plaintiff's entire theory to support his lawsuit crumbles on top of itself.[7]

Federal Rule of Civil Procedure 15 states that a "party may amend its pleading only with the opposing party's written consent or the court's leave[,]" though the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[a]lthough the rule should be interpreted with 'extreme liberality,' leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted).

A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (citation omitted). However,

---

[6] Both Defendants point out that Plaintiff does not deny that the signature on the form is his. (Doc. No. 21 at 6; Doc. No. 22 at 5.)

[7] Curiously, the Court notes that Plaintiff's complaint and declaration are at odds with each other. Plaintiff's complaint makes no mention of meeting with a Vivint employee, (*see* Doc. No. 1 ¶¶ 27–31), while Plaintiff testifies in his declaration that he knew that the man at his home was a Vivint employee and that he provided his social security number to the employee so that he could verify that Plaintiff was the homeowner, (Del Llano Decl. ¶¶ 6–8).

not all of the factors merit equal weight, "[a]s this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

After considering the sworn testimony of Mr. Johnson and viewing his statements against the pleadings, the Court finds that "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *implied overruling on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Thus, any further amendment would be futile. *See Ashcroft*, 556 U.S. at 663 ("[A] complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citation and internal quotation marks omitted). Further, the Court finds that Defendants would be prejudiced if discovery were allowed at this juncture as their testimonies sworn under oath supports a finding of the unfeasibility of Plaintiff's complaint as a whole.

In sum, the Court finds that the reasons for denial of leave to amend in this case are "readily apparent" as Defendants' declarations illuminate the impossibility of the theories that support Plaintiff's complaint. *Loehr v. Ventura Cty. Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984). Accordingly, within its discretion, the Court **DENIES** Plaintiff leave to amend his complaint based on futility as "futility includes the inevitability of a claim's defeat on summary judgment." *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987); *see also Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986) (holding that "any amendment would have been futile in that it could be defeated on a motion for summary judgment.").

///

///

///

///

15

## CONCLUSION

As explained in more detail above, the Court **GRANTS** Vivint's motion to dismiss Plaintiff's complaint for lack of Article III standing, **DENIES AS MOOT** both Vivint and Mosaic's motions to compel arbitration, and **DISMISSES** Plaintiff's complaint **WITH PREJUDICE**. (Doc. Nos. 7, 14.)

**IT IS SO ORDERED**.

Dated: February 1, 2018

Hon. Anthony J. Battaglia
United States District Judge